UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LONESTAR LIVESTOCK EQUIPMENT CO. INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H:15-447 |
| | § | |
| SOUTHERN LIVESTOCK SYSTEMS, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Pending before the court is defendant Southern Livestock Systems, LLC's ("Southern Livestock") motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and, in the alternative, to transfer venue to Florida pursuant to 28 U.S.C. § 1404(a).  Dkt. 16.  Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion to dismiss should be GRANTED and plaintiff Lonestar Livestock Equipment Co. Inc.'s ("Lonestar") claims should be DISMISSED.

## I. BACKGROUND

Lonestar, a livestock equipment manufacturer located in Montgomery County, Texas, brought this suit in Texas state court claiming that Southern Livestock breached a contract between the parties by failing to pay for labor and livestock equipment provided by Lonestar.  Dkt. 1.  The case was removed to federal court on February 18, 2015, after Southern Livestock filed a motion to remove based on federal diversity jurisdiction.  Dkt. 1.  On February 25, 2015, Southern Livestock filed a motion to dismiss for lack of personal jurisdiction.  Dkt. 6.  On March 5, 2015, Lonestar filed an amended complaint.  Dkt. 11.  Then, on March 6, 2015, Lonestar responded to the motion to dismiss, and on March 16, 2015, Southern Livestock replied.  Dkts. 12, 15.  However, because the

amended complaint had been filed, the court mooted Southern Livestock's first motion to dismiss. On March 19, 2015, Southern Livestock timely filed a second motion to dismiss for lack of personal jurisdiction.  Dkt. 16.  Lonestar did not timely file a response to the second motion to dismiss, but the court considers Lonestar's response to the first motion to dismiss in its consideration of the second motion to dismiss.[1]

In its response and amended complaint, Lonestar alleges that this court has specific jurisdiction or, alternatively, general jurisdiction over Southern Livestock. Dkts. 11, 12.  Lonestar alleges that Southern Livestock is subject to specific jurisdiction in Texas because Southern Livestock engaged in the following contacts with Lonestar, a Texas business: Southern Livestock provided plans to Lonestar, routinely contracted and communicated with Lonestar via email and text messages, and arranged to make payment to Lonestar in Texas for equipment that Lonestar manufactures in Texas.  Dkts. 11, 12.  Lonestar alleges these contacts are sufficient to support the exercise of specific jurisdiction over Southern Livestock because Lonestar's claims arise from these contacts.  Dkts. 11, 12.  Lonestar further alleges that Southern Livestock is subject to general jurisdiction in Texas because Southern Livestock representatives traveled to Texas, negotiated with Lonestar and other Texas businesses to distribute Southern Livestock's products in Texas, and advertised that Southern Livestock was doing business in Texas.  Dkts. 11, 12.

---

[1] By Southern Livestock's own admission, the second motion to dismiss was filed only "[o]ut of an abundance of caution," and is nearly identical to the first motion. Dkt. 16.  Regardless of whether the court considers the motion as unopposed due to a lack of response, or with the response to the original motion to dismiss, the outcome is the same: The court concludes that Lonestar has not established personal jurisdiction.  Therefore, rather than "exalt form over substance," the court will consider Lonestar's response to the first motion to dismiss when ruling on the second. *Thomas v. Miramar Lakes Homeowners Ass'n*, No. 4:13-CV-1479, 2014 WL 3897809, at *4-5 (S.D. Tex., Aug. 6, 2014) (Harmon, J.) (considering defendant's initial response as though it were directed at plaintiff's amended complaint because the arguments were equally applicable).  The court will also consider Southern Livestock's reply to Lonestar's response.

Southern Livestock contends that it is subject to neither general nor specific jurisdiction in Texas.  Dkt. 16.  Southern Livestock asserts that general jurisdiction is inappropriate because it is a Florida-based company, formed under the laws of Florida, with no place of business outside of Florida.  Dkt. 16.  Southern Livestock disclaims any affiliations with Texas outside of its contacts with Lonestar and its representative's single, unrelated visit to Texas in April 2014.  Dkt. 16.  Southern Livestock further denies issuing marketing or directing any advertising towards Texas.  Dkt. 16.  As to specific jurisdiction, Southern Livestock asserts that the contacts Lonestar alleges are insufficient to sustain specific jurisdiction.  Dkt. 16.  Further, Southern Livestock swears, through the affidavit of its General Operations Manager, Michael Reed, that, contrary to Lonestar's allegations, the contract arose and performance was to be completed in Florida, not Texas.  Dkt. 16.

## II. ANALYSIS

Southern Livestock moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) because it asserts that the court lacks either general or specific personal jurisdiction over Southern Livestock.  Alternatively, Southern Livestock moves to transfer venue pursuant to 28 U.S.C. § 1404(a).

### A. Lack of Personal Jurisdiction

#### 1.    Legal Standard

A court must dismiss an action when it lacks personal jurisdiction over the defendant.  FED. R. CIV. P. 12(b)(2).  When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the resident plaintiff has the burden of establishing personal jurisdiction over the nonresident.  *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  When a district court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdiction, and the court may consider the entire contents of the record, including affidavits.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "The allegations of the

3

complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270–71 (5th Cir. 1983)).  However, "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with due process under the U.S. Constitution.  *Clements v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  This two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process.  *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868 (1984)).

A plaintiff seeking to establish the court's personal jurisdiction over a nonresident defendant must show that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of 'fair play and substantial justice.'" *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).  Minimum contacts are established through the assertion of either general or specific jurisdiction.  *Panda Brandywine*, 253 F.3d at 867.  Specific jurisdiction refers to a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n. 8.  General jurisdiction refers to a suit which does

4

not arise from the nonresident's contacts with the forum, and is asserted only over defendants who maintain "continuous and systematic" contacts in a particular forum.  *Id.* at 415.

If minimum contacts are established, the second prong of the due process test requires that the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316.  To determine whether the exercise of jurisdiction is fair and reasonable, the court examines five factors: (1) the nonresident defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; (5) and the states' shared interests in furthering fundamental social policies.  *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009).

> 2.    *Specific Jurisdiction*

"Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Helicopteros*, 466 U.S. at 414 n. 8).  In this circuit, "specific personal jurisdiction is a claim-specific inquiry" that asks "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'"  *McFadin*, 587 F.3d at 759 (quoting *Sieferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).  When analyzing specific jurisdiction, the court's focus is only on the defendant's contacts with the forum state specific to the cause of action, not the plaintiff's contacts, nor contacts unrelated to the cause of action.  *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1122 (2014) (The Court has "consistently rejected attempts to satisfy the *defendant*-focused 'minimum contacts' inquiry by demonstrating contacts between the

5

*plaintiff* (or third parties) and the forum State.") (emphasis added) (quoting *Helicopteros*, 466 U.S. at 417); *McFadin*, 587 F.3d at 759 (specific jurisdiction requires the "cause of action [to arise] out of or [result] from the defendant's forum-related contacts . . . .").

The Fifth Circuit has outlined several types of contacts that are insufficient to show that a defendant purposely availed itself of the privilege of conducting business in the forum state.  For example, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).  Traveling to the forum state to inspect plaintiff's facilities and resolve a contractual dispute is insufficient. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d at 1026, 1029 (5th Cir. 1983).  Communications with the plaintiff in the forum state are insufficient. *Holt*, 801 F.2d at 778.  Mailing payments or agreements to Texas is insufficient. *Id.*; *Hydrokinetics*, 700 F. 2d at 1029.  Even several of these contacts alleged together is not enough.  In *Holt*, the Fifth Circuit found that the nonresident defendant's contacts with Texas were insufficient to exercise specific jurisdiction where the defendant entered into a contract with a Texas corporation; sent a final, joint operating agreement from Oklahoma to Texas; sent three checks from Oklahoma to Texas in partial performance of the contract; and engaged in extensive telephonic and written communication with the Texas corporation.  801 F.2d 773, 778.

The court begins by analyzing Lonestar's undisputed allegations that Southern Livestock engaged in the following contacts with Lonestar: Southern Livestock exchanged 530 texts and emails and 457 phone calls with Lonestar; Southern Livestock arranged to make payment to Lonestar's bank in Texas; and Southern Livestock contracted with Lonestar to buy equipment that Lonestar manufactures in Texas.  Dkt. 11 at 2-3.

At the outset, the court notes that whether Lonestar manufactures equipment in Texas or utilizes a Texas bank is irrelevant to the analysis because the court focuses on Southern Livestock's contacts with Texas. *Walden*, 134 S. Ct. at 1122. Further, the fact that Southern Livestock contracted with Lonestar alone, is an insufficient contact. *Hydrokinetics*, 700 F.2d at 1028–30; *Holt*, 801 F.2d at 778. The fact that the parties exchanged hundreds of phone calls, texts, and emails are also insufficient contacts. *Holt*, 801 F.2d at 778. Even alleged together, Fifth Circuit precedent demonstrates that these types of contacts do not show that the defendant purposely availed itself of the privileges of conducting business in Texas. *Hydrokinetics*, 700 F.2d at 1028–30; *Holt*, 801 F.2d at 778.

Lonestar also makes allegations that Southern Livestock directly disputes. Lonestar alleges in its complaint that Southern Livestock provided preliminary project plans to Lonestar in Texas. Dkt. 11 at 2. Southern Livestock, however, swears in an affidavit that the contract was formed in Florida, and that Lonestar's representative received the plans in Florida when Lonestar's representative traveled to Florida in June, 2014. Dkt. 16-1 at 4. At this stage of the case, conflicts in the allegations generally must be resolved in favor of the plaintiff; but the court is not required to credit conclusory allegations, or allegations controverted by opposing affidavits. *Panda Brandywine*, 253 F.3d at 869; *Thompson*, 755 F.2d at 1165. Lonestar's assertion that the project plans were provided to it in Texas is conclusory in and of itself as there is no location, date, or other detail attached to the assertion. Even if Lonestar's allegation was not conclusory, it is controverted by Southern Livestock's sworn affidavit alleging Lonestar's trip to Florida and the method by which Lonestar received the plans. Dkt. 16-1 at 4; *Thompson*, 755 F.2d at 1165. The court need not credit Lonestar's conclusory and controverted allegation that the plans were delivered in Texas. For all

these reasons, Lonestar has not alleged contacts sufficient to demonstrate a prima facie case that specific jurisdiction exists.

     *3.*     *General Jurisdiction*

     For general jurisdiction to exist, defendant's contacts with the forum state must be more than single or isolated activities. *Int'l Shoe Co.*, 326 U.S. at 317. "The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992). Doing business *with* Texas businesses will not subject a nonresident defendant to general jurisdiction absent a physical presence *in* Texas. *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999). The Supreme Court has recently stated that the relevant inquiry in determining general jurisdiction is whether the defendant's contacts "'render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011)). "[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of [general personal] jurisdiction." *Helicopteros*, 466 U.S. at 417. At this point, "[e]stablishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts in the forum State." *Panda Brandywine Corp.*, 253 F.3d at 868.

     Lonestar first alleges that Southern Livestock markets and distributes its products in Texas; but, nowhere in its 150 pages of exhibits does Lonestar tell the court what products are being marketed or where they are being distributed or sold. Further, the allegations are directly controverted by Southern Livestock's opposing affidavit that swears Southern Livestock "does not issue any marketing or advertising directed towards Texas" and "does not continuously or

systematically sell or distribute any products in Texas." Dkt. 16. Southern Livestock also swears it does not have offices in Texas, does not rent or lease property in Texas, does not have any employees in Texas, and does not maintain any mailing address or telephone listing in Texas. The court is not required to rely on Lonestar's bare assertions as true. *Thompson*, 755 F.2d at 1165.

Lonestar's reference to the numerous phone calls and emails from Southern Livestock, along with Southern Livestock's Facebook posts, do not establish that Southern Livestock is "essentially at home" in Texas. Rather, such references merely establish that Southern Livestock did business and communicated with Lonestar, which is insufficient to subject a nonresident defendant to general jurisdiction. *See Access Telecom*, 197 F.3d at 718 (continuous and systematic contacts *with* Texas are not enough to prove business *in* Texas, which is required to exercise general jurisdiction). That Southern Livestock made payments to Lonestar's Texas bank "is not an appropriate consideration." *Helicopteros*, 466 U.S. at 417 (plaintiff's choice of bank is a unilateral activity which is insufficient to subject a nonresident defendant to personal jurisdiction). The duplicative copies of Southern Livestock's Facebook posts only prove a single point of sale— unrelated to this cause of action—and a single trip to Texas, neither of which individually, or collectively, constitutes "substantial activities." Dkt. 14, Ex. D at 1, 3, 4, 19–23. Lonestar alleges that Southern Livestock's Facebook post—stating that it was making a delivery of products to Texas and thanking Lonestar for Lonestar's purchase—was an advertisement of Lonestar's relationship with Southern Livestock as the distributor of Southern Livestock's products in Texas. Dkt. 12-1 at 4, 5. Affording a single Facebook post the most generous inference of being an advertisement still "does not help establish continuous and systematic contacts." *Access Telecom*, 197 F.3d at 718 (yellow page ad soliciting ads was insufficient to establish business *in* Texas without naming cities, time and duration of sales, or proof that ads were actually placed). Finally, by Lonestar's own admission, Southern Livestock

9

"may not have yet set up roots in Texas" and merely has "intent to expand its business into Texas." Dkt. 12 at 9.  Accordingly, Lonestar has not discharged its burden of establishing that Southern Livestock is "essentially at home" in Texas.  *Daimler AG*, 134 S. Ct. at 761.

　　　　*4.*　　*Conclusion*

　　　　The court need not address whether the exercise of personal jurisdiction comports with notions of fair play and substantial justice because Lonestar has failed to meet its burden under the first prong of the test.  Southern Livestock's limited contacts with Texas are insufficient to prove the purposeful availment which would support the exercise of specific jurisdiction.  The exercise of general jurisdiction is also improper because Lonestar has only made bare assertions regarding Southern Livestock's systematic and continuous contacts with Texas and has failed to prove Southern Livestock's presence *in* Texas.  For the foregoing reasons, the court finds that Lonestar has not established personal jurisdiction.

**B. Transfer of Venue**

　　　　Because the court has already determined that it does not have personal jurisdiction, it need not consider Southern Livestock's alternate motion to transfer venue.  28 U.S.C. § 1406(a).

### III. Conclusion

　　　　Southern Livestock's motion to dismiss (Dkt. 16) is GRANTED.  All claims made by Lonestar are hereby DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

　　　　Signed at Houston, Texas on June 16, 2015.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Gray H. Miller
　　　　　　　　　　　　　　　　　United States District Judge

10